Good morning, Your Honors. Eric Craig Jacobson for Appellant Ricky Andre Pickett, who is here in the courtroom to my left. May it please the Court. Writing in the ABA Journal in October of 1968, Supreme Court Justice Abe Fortas said, Constitutional procedure is the heart, conscience, and soul of the civilized community. It is the basic principle for which men from the earliest days have fought and died. What is liberty if it is not the right to due process of law in all its forms before the State may consign a man to prison or take his life? Unquote. In Morrissey v. Brewer, its landmark 1972 ruling, the Supreme Court made a great leap forward for American civilization. It recognized a parolee's liberty interest and carefully prescribed that procedures to be employed by State and local authorities whenever they wished to return a parolee to prison. In its historic Morrissey opinion, Chief Justice Warren Burger anchored these new procedural safeguards to society's interest in not erroneously, unnecessarily, or unjustly interrupting the reentry of a rehabilitating parolee who, in sum, is doing all right on parole in the community. Chief Justice Burger also reminded his fellow citizens, quote, society has a further interest in treating the parolee with basic fairness. Fair treatment and parole revocations will enhance the chance of rehabilitation by avoiding reactions to arbitrariness, unquote. On March 15, 2007, Mr. Pickett was a stable, well-performing parolee according to his agent's evaluation. That day, Ricky, an African-American man in his early 30s, and his then-girlfriend, Jody Anderson, who is white, were accosted by police officers while parked on a residential street in south-central Los Angeles while waiting for Ms. Anderson's daughter to finish a play date. LAPD officers. Correct. Are they being sued in this case? Yes. But they're not part of this appeal. Exactly. Yes. So who's part of this appeal? The state defendants, Your Honor. And those are the people to whom LAPD officers reported that your client was associating with a gang? Repeat that? Who's being sued? Both the state defendants who include parole agents and senior state officials and LAPD line officers who... Yeah, but up here we're talking only about the state officials who were parole supervisors, if you want to put them in a category. Parole supervisors and the parole agents who... And they were acting because LAPD called them up and told them Mr. Pickett was associating with gang members. Yes. There was a communication between the officers who conducted... The whole thing was started by LAPD. That's correct, Your Honor. Hours later, the same LAPD officers arrested Rickey for allegedly violating his parole by being in the company of three gang members. Mr. Pickett has contended throughout that the LAPD officer's account was fabricated and that one of the named gang members actually resided in Ironwood State Prison at the time. Your Honors, my client did not receive the due process and fair treatment of which Chief Justice Berger spoke in Morrissey. And Mr. Pickett admirably brought this damages lawsuit in lieu of any inappropriate reactions to arbitrariness, both by himself and by his fellow parolees. What's the specific due process violation that you're alleging? Your Honor, I'll get to that momentarily, but... No, no, no. Answer the question. I'll directly answer. We allege that Mr. Pickett was, it was mandatory under Morrissey that he be given a prompt probable cause, so-called probable cause preliminary hearing, in the words of Morrissey, hearing. And we contend that the outside timeframe for that, and that would be a qualitative preliminary hearing, the outside timeframe being 10 calendar days, is good. You said the final hearing within 35 days of the Valdivia settlement, correct? That's correct. And we contend that no court in ever has said that it could be more than 30 days. Judge Carlton's impeccable 2003 opinion went through this in great detail, and we contend that that is the correct analysis under the Constitution, and we urge you to- That's a single district court's opinion, not even in the district where Mr. Pickett was. That is correct. It's the quality of the reasoning that causes me to commend to you your close consideration of that particular timeframe. There are some reasons I cited in defense of Judge Carlton's reasoning to do with analogous situations. In a pounded car, you get a hearing in five days. A sex offender gets a hearing in 10 days, so a parolee should also get a preliminary hearing in the comparable timeframe. But even assuming that you're right, that the outside timeframe is 30 days, and that Judge Carlton is right that the outside framework is, is this a damage suit for which there's qualified immunity for the defendants? Is that correct? Yes. So you've got to convince us not only that they were wrong, but really wrong. Well, 35 days is really wrong. There's no doubt about that because no court in the entire country has ever said that a preliminary hearing under Morrissey can be more than 30 days. And so for them to take- Now you're not focusing on the 35, but rather on the 18? Well, the 18 was not qualitative. That's the problem. I mean, it's a, given the stakes involved, because you're talking about- There was some kind of, they call it a probable cause hearing on the 18th day, is that right? That's right. But it's non-qualitative, and therefore- So what happened at that hearing? Well, there's an opportunity for the parolee to attend in person and speak, but there's no, there's a distinct Morrissey violation built into the California Parole Authority's regime, and it's the fact that there's no witnesses allowed. You know, Morrissey says that, and it's explicit, that the parolee at the preliminary hearing has the right to bring persons. I believe it's the exact phrase. So that means you can bring a witness. California forbids it. That's a big procedural due process violation, because the difference, putting aside whether you also have committal confrontation rights, leaving that aside, just the fact you can't bring a witness, Your Honors, is a very big deal, because it can make the difference. Did he request a live witness before the day itself of the probable cause hearing? He did, Your Honor. All right. I cited in the record where his then-girlfriend Jody Anderson's name is, you know, written in by his parole agent on a paperwork that was done on the first or second day of the process, and it was clear that he wanted at least her to be present at his preliminary hearing, because she and he had been the subject of this intervention, being accosted by the LAPD a few hours before Mr. Pickett was arrested, and he wanted the deputy commissioner to take that into consideration. So he did request, and the structure would not have allowed it, you know, just did not allow it. Tell me more about the specificity of the request. In the record, and I'll, perhaps in this interim time before I get my reply opportunity, I hope, I'll look up the exact page, because it's right there. Her name is Jody Anderson. It's written in there. The parole agent wrote it down. Her phone number is next to it. And then that document is dated on, like, the second or third day after arrest. But what I'm interested in is what does the document say? This is a request to have Ms. Anderson present at my probable cause hearing, or preliminary hearing, as it's called. It's in the paperwork related to that, and I'll – What does it say? I mean, I couldn't find anything suggesting that there was a request to bring witnesses into that hearing. He was represented by counsel. Is that right? He was. Where is there something that says that he requested, at the appropriate time, witnesses to appear at that hearing? In the paperwork surrounding the revocation, Your Honor. Where? Where? What does it say? It's – I don't have it in my memory as we speak, but it is – it was referenced in the brief that – in this particular one I'm referring to. It was clear to them that – That doesn't get us anywhere. You're just beating around the bush. You can't point to anything specific that says that he wanted witnesses at that hearing. That's what I'm hearing. Well, I believe I can, but I don't have it memorized. So I can – Well, maybe when you're sitting down, as we're hearing from the other side, you can find it. I'll review the – Or maybe you can at least find the reference in the brief. I will. I have it with me, and I'll do that. And that was a determination at that hearing based on reports. There was enough to go forward. That was another infirmity because the – it was hearsay entirely. And that's how they structure it. And also I should point out in relation to your previous question, the structure is the problem. They don't allow witnesses. They can – their request would have been futile. And part of what is – Are hearsay issues – is hearsay reason to exclude evidence at a probable cause hearing? You say the police reports are hearsay. Yeah. If you take seriously the idea that the probable cause hearing has to be qualitative and they do have – Morrissey makes clear that on request you can have adverse witnesses, provided that there's no overriding – I believe the exact language is if there's a fear factor or some problem. But – I thought I heard you say earlier that the witnesses are prohibited from appearing at this 18-day hearing. That's the problem, Your Honor. The State structured an entire – Where does it say that witnesses shall not be called by a person under evaluation at that hearing? That's the Valdivia – There are cases – The Valdivia stipulated order is explicit about the nature of a preliminary hearing, so-called – sometimes it's used interchangeably. Preliminary is called in Morrissey probable cause in the Valdivia stipulated order. But that's the problem here. The Valdivia stipulated order basically institutionalizes an unconstitutional regime under Morrissey. And every parole – Mr. Pickett just is one. But every single one – How are these defendants supposed to know that? Pardon? How are these defendants supposed to know that? Well – You talk about the law does this and the order does that. If anything, it appears to me that these people were following the law. You don't like the law. But how should they have known that it wasn't – Well, Morrissey is very clear that you are allowed to bring witnesses. And they specifically implemented in the Valdivia stipulated order no witnesses, just the parolee himself, not even the parole agent. But if we're talking qualified immunity and they see this order, what are they supposed to do? Are they supposed to say, I can see just on his face that this is invalid? Well – I'm conceding for purposes of my question that maybe Morrissey says that this order is wrong. But if we're talking qualified immunity, how are these people supposed to be so sure that it's wrong that they can say, oh, I'm not going to pay any attention to that? Well, the difficulty here is that you have basically very well-represented counsel for the state and then the plaintiffs in Valdivia. And unfortunately, they collaborated in what – and Judge Carlton did enable it to a degree, unfortunately, a substitute for the exact prescribed due process that was in his July 2003. He said it – he put a roadmap. He said to the state officials, here is the problems with your proposed regime. It doesn't have – it doesn't have witnesses. It doesn't have – In some ways, I'm very sympathetic to your argument. It may very well be, and I'm not deciding it, it's not in front of us, that Morrissey is inconsistent with what Judge Carlton said. I'm just assuming for purposes of what I'm about to say that that's so. But to get at this in a suit for damages where you're facing a qualified immunity defense seems to me a very awkward way to go about it. What you need is – this can be tough because of the timeframe of these things, but I think you've got to have some sort of a prospective relief being sought, and maybe you can get yourself a sort of a fluid class of people who are subject to this sort of thing. But to come at this retroactively with respect to damages with a qualified immunity defense, that's a problem. Well, my view is a little bit different, Your Honor. I – what I think occurred here was basically the opposite of situations in which in the sense that this was an eyes-wide-open kind of calculated risk. What they didn't anticipate, I think, is that a parolee who was subject to this Valdivia regime – and, Your Honor, you said in passing, I don't know whether you misspoke, but it's Judge Carlton's preceding orders, preceding the Valdivia stipulated order. He – two major opinions, albeit of a district court, Judge Trout, you're correct, very clearly corresponded to Morrissey. He told them exactly what they had to do, and with their eyes wide open. Who's them? The California senior defendants. They knew because Judge Carlton had spelled out in detail in July of 2003 and then the previous year in June, here is what the Constitution requires for parole qualifications. You've got to do this and this and this, and then they put a plan, and he said your plan is deficient. It doesn't have this, this, and this, including witness, confrontation, and knowing full well that they were – basically because they were unwilling administratively to operate within 10 days to do confrontation, opportunity anyway, to do bring live witnesses. They didn't want any of it. And the plaintiff's attorneys in Valdivia said, okay, give everybody an attorney and we'll trade you this. And Judge Carlton said afterwards, well, the plaintiffs, they're going to give up some of their constitutional rights, but they're going to get another right because every parolee will get an attorney under Gagdon and you're happy and I'm happy. That's what Judge Carlton said. If I look at the excerpt of record pages 1898 and 99, it appears to be a concession by your client that he was aware that, quote, you have the right to call witness, present documents, and bring anything to show your innocence at the probable cause hearing. He seems to have indicated that he believed that he had that right. Now, if you look at the documents that you were talking about, there's a request for Jody Anderson to testify, but that's dated April 2, 2007, the date of the probable cause hearing, and it appears to be a request to have her testify at the final hearing. Well, I'll check that, as I said earlier. I believe that the document with Jody Anderson's name on it, unless I'm misremembering, was much earlier, March 17th or 18th, with the handwritten name of her phone number. It's dated April 2nd, the date of the probable cause hearing, and it's a request for her to testify at the final hearing. I think we're talking about two different documents. I'm talking about the one that has this handwritten Jody Anderson with her phone number next to it, and it's sort of a little bit out of place on the document and it's sort of in the lower middle. Is there anything in addition to her name that indicates that was a request for her to be a witness at the probable cause hearing? Yeah, I don't know what else it could have been because the agent was, I mean, it's all about at that point, how do we get this guy processed? Well, the identification of a witness has nothing to do with the, that doesn't necessarily mean it's a request to have that witness called to testify. Police reports are full of names of witnesses. Well, my understanding, you know, I don't, I guess I might differ just a bit, Your Honor. I think that all of the names that are associated with parole replication paperwork, and I did work in the field for five years and saw an awful lot of them, they're all about who's going to testify at, you know, in a character way or in a substantive way, you know, to try to show that there's not good cause for the revocation. So I hope that Your Honors will perhaps take another look at the clarity with which Judge Carlton told these defendants, this is what you have to do. And then there was what I consider to be a bit of an unholy deal made in which the parolees were disserved, unfortunately. Judge Tucker said, quote, no evidence exists that plaintiff or his attorney objected to the introduction of Pera's report and the officer's reports during the course of the preliminary hearing. Is that right? No, I, well. So he's wrong? In the sense that, Ms. Tucker, in the sense that at the probable cause hearing I made mention of the fact, in Mr. Pickett's deposition he made it quite clear, he was remonstrating for additional witness at the hearing in the form of the gentleman who was incarcerated at the time of the alleged sighting of this gang member whose name appeared as one of the three people that he was allegedly in the company of who was incarcerated at the time. So there was a lot of remonstrating. He was represented, but the bigger infirmity in my view and the reason that this lawsuit and the goal of it is to show that you have basically a structure of unconstitutional treatment of parolees that was done from the top at the highest level and was implemented in a completely, with a knowledge base that it was unconstitutional at the time it was entered into. You said about qualified immunities? We're well over time. Why don't we hear from the other side and then we'll give you a chance to respond. Thank you, Your Honor. Thank you, Your Honors. May it please the Court, Susan Coleman for appellees in this case. And the Court raised some excellent points in that we're not here to revisit the Valdivia decision. We're here to talk about the appellee's individual liability and under 1983 and whether there was qualified immunity. Did you raise qualified immunity below? We did, Your Honor. We raised it in the motion for summary judgment. The judge, when deciding the motion, didn't reach those grounds. It was decided on substantive issues. Did you raise it in the motion to dismiss? No, in the motion to dismiss, we discussed individual liability under 1983 and the lack of causation to most of the individual defendants, which were then dismissed. Plaintiff made general allegations against the defendants, such as Schwarzenegger saying that he's responsible for what happens within the State and for the Valdivia decree. Those defendants were dismissed, not until after the class certification motion had been filed, withdrawn, refiled, and opposed did plaintiff then move to amend. What are you asking us to do and why? I'm asking you to affirm the decision below. Why? On what grounds? It was proper. The Court, if you review the decisions in chronological order, Plaintiff appellate is appealing for those decisions, at least for the decisions made by the district court, that the motion to dismiss was improperly denied, that the class certification was improperly denied, the summary judgment, and motion for leave to amend his complaint. If you look at those in chronological order of what the district court did, both the motion to dismiss and the summary judgment are de novo. Class certification is an abuse of discretion. And at that point, when the class certification motion was decided, it was before plaintiff moved to amend. At that time, there were only three individual defendants before the Court, and so the issue was whether those individual defendants were responsible. This Court can affirm on any grounds raised below, though, whether or not the district court decided on summary judgment that they were entitled to qualified immunity. So here, the Court can find qualified immunity as it was raised below. For example, and I did pull the – the Court was correct that the April 2nd document was the only one that I could find that references Jody Anderson being requested. At that point, it was after the initial probable cause hearing had been made. And those parole agents and officers are entitled to rely on hearsay statements by other law enforcement. Plaintiff signed an acknowledgment that he knew that he could present evidence such as documentary evidence. He could have testified himself. He made no objection. His counsel made no objection at that hearing. They didn't present any evidence. Mr. Pickett didn't make a statement at that hearing, so there was probable cause found. The parole agent and the commissioner here followed the guidelines in Valdivia, which, even if this Court found as appellants suggesting that they don't comply with due process, under RUFO, a consent decree may not provide fewer rights than the Constitution. The defendants here were certainly entitled to rely upon the consent decree and the computerized deadlines that were generated for them to have the various hearings and the guidelines for them to have those hearings. I'm not sure how relevant this is to our ultimate decision, but had Mr. Pickett timely requested the presence and the ability to testify by Ms. Anderson at this preliminary hearing, what would have happened? Under the terms of Valdivia, it likely wouldn't have been allowed. He could have made a statement himself as to what Jody Anderson would have testified. He could have made an offer of proof. He could have had a letter from her that documentary evidence is allowed. So an affidavit from her, for example, would have been admitted? Yes, Your Honor. But she herself likely or maybe even certainly would not have been permitted to testify? Likely not at the preliminary hearing. That's just a determination of probable cause that they're going to go forward. Right. So your adversary is right when he says no live witnesses except for the parolee himself or herself will be permitted? Yes, that's correct under Valdivia. Okay. But in this case, the parole agent that we're talking about here, here if you look at the individual connection of the parole agent, Perez, he wasn't on duty the night of the arrest, March 15th. Parole agent Almazan was on duty. He was called. He placed the parole hold. He had no further involvement with plaintiffs. He's certainly entitled to rely on LAPD representations. That plaintiff was with the East Coast Crip gang members that he was found with that evening. Defendant Perez then made a recommendation for a 12-month return to custody and made a summary, and he appeared at the hearing. Again, he had no liability to speak of. Plaintiff wants to make this case about challenging Valdivia and about broader due process concerns. But what's before this Court is the decisions made by the district court and the individual liability of these specific individual defendants. Defendant Allen, for the Board of Parole hearings, the district commissioner, he found probable cause existed at the hearing on March 28th. It's important here, too, not just to talk about Morrissey and Valdivia in a broader sense, but the individual defendant's liability and also the fact that plaintiff did not object at that initial hearing, even though he was represented by counsel. That's an important fact for this Court to consider on appeal. I don't know if this Court has specific questions about. There's a lot of stuff raised in the brief. I think it's pretty well addressed below. I would just note first that if there's things that weren't addressed in plaintiff's 68-page brief, it doesn't constitute a waiver of them from our party, even though in the reply brief that's what appellant noted. If plaintiff wants to attack the terms of Valdivia and the unconstitutionality of Valdivia itself, then that should be raised before Judge Carlton. Here, the Court has much more limited questions. And I would also note, as a matter of judicial record, that under AB 109 and the realignment system, the parole revocation system has changed dramatically in California and is now being regulated by counties. So it's a whole different system now. But here, this is a suit for damages that plaintiff's bringing. So as the Court's questions indicated, qualified immunity is appropriate in this case for these individual defendants. Does the Court have any additional questions? Roberts. I think not. Thank you. Thank you, Your Honor. Let's put one minute back on the clock for you, Mr. Jacobs. Your Honor, the answer to your questions, Judge Trott, on the opening brief at page 46, about two-thirds down, there's a citation to his page, his deposition pages, 265, 254, and 258. And the key document, and then there's some other references there, and the key document that I was referring to with Ms. Anderson's handwritten name handwritten on 316, 2007, it's a Perez-generated document. Who's Perez? That's the parole agent who I believe is Mr. Pickett's own parole agent. So he wrote it down? Yes. What does it say? It's a request by your client for a witness to appear at the hearing. 2086. I don't have the actual document, but the page number is 2086. That's the document I was referring to. What does it say? It has Ms. Anderson's name and phone number right next to it. Is it a request for an appearance of a witness? I don't have the actual document. I could actually get to a computer and pull it up, because I have my whole excerpts of record on a chip, but I don't have it accessible instantly here. But I can even print it out and deliver it to the clerk if you like, Judge Trott. I believe that in the context it's quite clear that it is a request for Ms. Anderson to participate in the defense of Mr. Pickett during his revocation. There's innumerable issues. And at the actual parole hearing, was there a request that was saying, listen, I requested it earlier, and how come she's not here? You know, one of the unfortunate aspects of the record is that the actual tape recording of Mr. Pickett's, I presume the probable cause hearing is also tape recorded, as is the final. But Mr. Pickett consulted me after the fact, and there was no opportunity to retrieve. In other words, you don't have that record. The tape recording is unfortunately not lost to history. So the short answer is we don't have it. Let me ask you a different question. It's just been represented that had he sought to introduce an affidavit from Ms. Anderson, he could have done so, consistent with Valdivia. Is that right? That's correct, Your Honor. But that's inconsistent with Morrissey in the sense that Morrissey clearly states in plain language that you can bring witnesses. And this is, again, something that I was hoping a damages verdict here would be a major inducement for California in a wake-up call in the sense that I believe this will continue. There is every indication from Ms. Coleman's brief that California intends to revert. Ms. Coleman just mentioned the new regime where, as we speak, the regular parolees, not the realigned parolees who are the more, they call them non-non-nons, they're under a new regime. But the regular parolees are not. And they, I believe, will now be subjected to the pre-Valdivia situation of endless waits for their parole revocation hearings. May I make a 15-second final reminder? 15 seconds. These differentials are critical. As Your Honors, when you went through the brief which I listened to online in Starr v. Baca, every day in custody can be perilous. The difference between getting out on the 10th day and the 25th day can be life or death for parolees. And there are tens and hundreds of thousands who will be processed. Notwithstanding what Ms. Coleman said, going forward without due process, because California has no commitment to a speedy probable cause hearing to release those who can show their factual innocence. And they'll be at risk. Thank you, Your Honors. Thank you very much. Pickett. Josh? I'm sorry. It's okay. Pickett is now submitted for decision. I should give the full case. Pickett v. Allen, now submitted for decision. I need it by the end. Next case on the calendar, Tomlin v. Kettinger, Los Angeles.
judges: Stein, Trott, Fletcher